In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 05-3347, 05-3349, 05-4169

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILFRED TRICE, JABAR R. SMITH,
and JEFFREY MCREYNOLDS,

*Defendants-Appellants.*

———————

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-22—**John C. Shabaz**, *Judge.*

———————

ARGUED FEBRUARY 21, 2007—DECIDED APRIL 30, 2007

———————

Before EASTERBROOK, *Chief Judge*, and FLAUM and
SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. Wilfred Trice, Jabar Smith, and
Jeffrey McReynolds pleaded guilty to conspiracy to
possess with intent to distribute fifty grams or more of
cocaine base in violation of 21 U.S.C. §§ 841(a) and 846.
The district court sentenced the defendants to 264, 294,
and 235 months in prison, respectively. McReynolds
appeals his conviction, and all three defendants appeal
their sentences. For the following reasons, the Court
affirms the conviction and sentences.

## I. Background

In 1999, the Dane County, Wisconsin Narcotics and Drug Task Force began investigating a drug conspiracy that involved Smith and Trice. The investigation led to a January 2001 search of a Fitchburg, Wisconsin apartment, where Smith and Trice stored and trafficked their drugs. Police recovered 150 grams of heroin, 236 grams of cocaine base, a firearm and ammunition, and $20,000 in cash. As the investigation continued in late 2001 and early 2002, undercover agents purchased cocaine base from all three defendants on a number of occasions, and a confidential informant gave police further information about the defendants' drug trafficking activity. On February 16, 2005, a grand jury indicted the defendants for, among other things, conspiring to distribute fifty or more grams of cocaine base.

### A.  Smith

On May 26, 2005, Smith pleaded guilty to the conspiracy charge. Shortly afterwards, the probation department issued a pre-sentence investigation report (PSR), which found Smith responsible for conspiring to distribute more than 1.5 kilograms of cocaine base and recommended a base offense level of 38 under the Sentencing Guidelines. A two-level increase for possession of a firearm, a three-level reduction for acceptance of responsibility, and a criminal history category of III resulted in a proposed Guidelines range of 262-327 months. Smith told the probation officer that he had never held a verifiable job and that he had been helping out with his father's plumbing business and doing odd jobs before his arrest. He conceded that most of his money came from drug trafficking and that no physical or mental restriction prevented him from working full time.

Prior to imposing Smith's sentence, the district court evaluated the sentencing factors outlined in 18 U.S.C. § 3553(a). It acknowledged the letters it received from Smith's family and friends and noted that Smith was a young defendant, who grew up in a stable home, but dropped out of high school because he began having children. The court also cited Smith's absence of employment history, noting that there was "no requirement that he refuse employment." Based on Smith's criminal history and poor adjustment to probation supervision, the district court concluded that Smith represented a significant recidivism risk and sentenced him to the middle of the Guidelines range, 294 months.

### B.  Trice

On May 27, 2005, Trice pleaded guilty. The probation department issued a PSR, which found him responsible for distributing 1.5 kilograms or more of cocaine base and recommended a base offense level of 38. It also recommended a two-level increase for possession of a firearm, a three-level reduction for acceptance of responsibility, and a criminal history category of II, resulting in a proposed Guidelines range of 235 to 293 months. The PSR also noted that Trice was raised in three different foster homes, never held a verifiable job, and relied on drug trafficking proceeds as his sole means of support.

At the sentencing hearing, Trice's attorney argued for a sentence at the lowest end of the Guidelines range, noting his client's unstable upbringing, an insignificant criminal history, and numerous letters of support indicating that Trice was a loving father who took parenting seriously. In imposing a sentence of 264 months, the district court noted Trice's numerous arrests as well as his decision not to go to school, find work, or have a family life. It also recognized that Trice conspired with others to

distribute a "significant amount" of heroin and cocaine base in the Madison area and that a sentence in the middle of the Guidelines range was necessary to prevent Trice from returning to the streets and dealing drugs in the future.

### C. McReynolds

On August 10, 2005, McReynolds pleaded guilty. His plea agreement stipulated that he conspired to deliver crack cocaine, as provided in the notes to the drug quantity table found in § 2D1.1(c) of the Guidelines, and he confirmed at his change of plea hearing that he sold "crack" cocaine.

On September 14, 2005, the probation department issued a PSR, which found that McReynolds's relevant conduct involved 1.5 or more kilograms of cocaine base and recommended a base offense level of 38. With a two-level increase for possession of a firearm and a three-level reduction for acceptance of responsibility, the PSR proposed a total offense level of 37. Two weeks later, McReynolds filed an objection to the PSR, arguing that the government offered little or no evidence tying him to the drugs sold during the early stages of the conspiracy and no evidence that he was responsible for the conspiracy's use of a firearm. The probation department agreed and reduced its proposed total offense level to 33. Given McReynolds's criminal history category of IV, the PSR's recommended Guidelines range was 188 to 235 months.

At the sentencing hearing, the district court said there was nothing unusual about McReynolds's case and found "no justification whatsoever" for providing leniency. The court noted that McReynolds came from a good family but declined the opportunity to get more education and that he was in good health but never held regular employ-

ment. The court also found that the conspiracy took place over a long period of time and involved a significant amount of cocaine base. The court then sentenced McReynolds to 235 months, the top of the Guidelines range.

## II.  Analysis

The Court reviews a sentencing court's factual findings for clear error and its legal conclusions de novo. *See United States v. Jones*, 313 F.3d 1019, 1021 (7th Cir. 2002). Where a defendant does not raise a particular objection in the district court, our review is for plain error. *See United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005). Under that standard, the defendant has the burden of proving an error that is obvious and that affects substantial rights. *Id.* If all three conditions are met, then this Court may exercise its discretion to address the error, but only if the error affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997).

### A.  Smith

Smith contends that the district court erred by increasing his sentence based on an unsupported factual finding that he refused legitimate employment. Because Smith did not object below, our review is for plain error. *See Lee*, 399 F.3d at 866. Smith premises his argument on a statement in the middle of the district court's discussion of the § 3553(a) factors, in which it said, "This is a case where the defendant made his own decisions. No coercion, no requirement that he refuse employment. He's 24 years of age, has three children, a nonexistent employment history. He relied on drug trafficking proceeds as his primary means of support."

The tenor of the district court's statement was that Smith never held a legitimate job, even though nothing (like a disability) prevented him from working. This was hardly a controversial proposition given the undisputed fact, laid out in the PSR, that Smith suffered from no physical or mental disabilities. Nevertheless, Smith maintains that the district court committed plain error when it made this remark, because it suggested that Smith refused employment. This argument is meritless. Putting aside the question of whether the district court's statement was a factual finding that needed record support, *see United States v. Orozco-Vasquez*, 469 F.3d 1101, 1108 (7th Cir. 2006) (stating that certain observations about the § 3553(a) factors are not factual findings but statements made as part of "an evaluative process by which the judge considers the particular statutory factors which inform the sentence he has decided to impose"), the district court did not find that Smith refused employment. Rather, it found that there was no physical or mental limitation that kept Smith from getting a job. The record adequately supported this finding.

### B. Trice

Trice argues that his Guidelines range sentence was unreasonably harsh for a number of reasons. A sentence within a properly calculated Guidelines range is presumptively reasonable. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Trice did not request a non-Guidelines sentence in the district court, and he concedes that our review is for plain error. *See United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005).

Trice first contends that if a Guidelines range sentence is presumptively reasonable and if 18 U.S.C. § 3553(a) requires a sentence to be no greater than necessary to meet the purposes of sentencing, then a district court is

always obliged to sentence a defendant at the low end of the Guidelines range. We reject this argument. The presumption of reasonableness that this Court applies when reviewing a district court's sentence does not require a district court to conclude that every sentence within a defendant's Guidelines range is a reasonable one. Indeed, the presumption we apply reflects the fact that district courts examining the countless Guidelines and non-Guidelines factors involved in sentencing will come to different conclusions about what sentence is appropriate but no greater than necessary. Though our presumption recognizes that the Guidelines provide a range of generally acceptable sentencing outcomes, it does not require a district court to conclude that the low end of the Guidelines range is appropriate for every defendant. Such an approach would ignore the individual facts that make certain crimes more (or less) reprehensible—facts that a district court is best suited to analyze through live testimony. If the district court, as in this case, supports its Guidelines-range sentence with cogent reasons and specific facts grounded in the § 3553(a) factors, we will not disturb its ruling. *See, e.g.*, *United States v. Lopez*, 430 F.3d 854, 857 (7th Cir. 2005).

Trice next argues that the district court put too much emphasis on the Guidelines, treating them as "a super-sentencing factor." We reject this argument as well. Justice Breyer's remedial opinion in *United States v. Booker*, 543 U.S. 220, 259-60 (2005), makes clear that a district court *must* consider the Guidelines range as part of its sentencing analysis and that to do otherwise would constitute reversible error. Trice's real complaint is that the district court did not agree with his reasons for a more lenient sentence—his disadvantaged childhood

and three young daughters.[1] The district court, however, explicitly addressed these factors (which are hardly unique to defendants facing significant drug sentences) and concluded that they were outweighed by the need for individual and societal deterrence. Because the district court considered the defendant's arguments and supported its decision with concerns outlined in § 3553(a), it did not abuse its discretion, let alone commit plain error. *See United States v. Filipiak*, 466 F.3d 582, 583-84 (7th Cir. 2006) (rejecting the defendant's reasonableness challenge where the district court considered mitigating factors, including the defendant's restitution, remorse, and intelligence); *United States v. Williams*, 436 F.3d 767, 768-69 (7th Cir. 2006) (rejecting the defendant's reasonableness challenge where the district court considered mitigating factors, including the defendant's particularly traumatic experiences as a youth). Indeed, we would uphold the district court's sentence as reasonable even if we had not presumed it to be so. *See, e.g.*, *United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006).

### C. McReynolds

McReynolds's attorney has filed an *Anders* brief, arguing that there is no issue of arguable merit to present on appeal. The attorney maintains that the district court held a thorough plea colloquy and that McReynolds entered the plea freely, voluntarily, and knowingly. Counsel also states that the district court adopted the offense level that McReynolds requested and sentenced him within the

---

[1] Trice also maintains that the district court placed insufficient weight on his acceptance of responsibility, but that factor was already reflected in Trice's Guidelines range. The district court was not required to consider the factor again as part of its § 3553(a) analysis.

applicable Guidelines range. In response, McReynolds has filed his own brief, arguing that his attorney acted unreasonably by not advising him that sentences for crack distribution are harsher than sentences for cocaine powder distribution. Had his attorney so informed him, McReynolds contends, he would not have pleaded guilty because crack is scientifically no different than cocaine.

To prove ineffective assistance of counsel, a defendant must show that his attorney's performance was objectively unreasonable and that the performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 688, 691-92 (1984). Assuming for purposes of argument that McReynolds's attorney acted unreasonably by not advising him about the different sentences for crack and cocaine powder, McReynolds has not shown that his attorney's performance prejudiced him. This lack of information could not have rendered McReynolds's plea involuntary, because the crack/cocaine powder issue is a sentencing matter and would have been irrelevant to a trial on whether McReynolds conspired to distribute a controlled substance. *See United States v. Gray*, 182 F.3d 762, 768 (10th Cir. 1999) ("We . . . reject appellant's claim that his counsel's failure to request the government preliminarily to prove a sentencing matter somehow made his plea involuntary.") Along the same lines, McReynolds has not shown that knowing about the crack/cocaine sentencing disparity would have affected his sentence. He bears the burden of proving that his sentence would have been different had his attorney acted reasonably, s*ee United States v. Johnson-Wilder*, 29 F.3d 1100, 1104 (7th Cir. 1994), but he has not offered evidence—or even alleged—that the substance he possessed was cocaine powder. *See Gray*, 182 F.3d at 768 ("Having failed to claim the existence of evidence that the drug involved was not crack, appellant cannot meet the prejudice prong of his inef-

fective counsel claim."). Consequently, his ineffective assistance claim is meritless.[2]

McReynolds also maintains that his attorney acted unreasonably by not advocating for a sentence at the low end of the Guidelines range. We reject this argument as well. McReynolds does not suggest that his attorney should have submitted additional information in support of an argument for a different sentence, and there is no reason to believe that the district court would have sentenced McReynolds differently based on a bald request for leniency. McReynolds discusses how he would have weighed the § 3553(a) sentencing factors if he were the district court judge and why twenty-year drug sentences are absurd, but his policy arguments concerning the utility of long drug sentences—though sensible to some—do not speak to his attorney's ineffectiveness. Nor do they speak to our review of the district court's reasonableness determination.

Finally, McReynolds argues that the 100:1 crack to cocaine sentencing ratio violates the Equal Protection Clause and that the district court violated Rule 11 of the Federal Rules of Criminal Procedure by not informing him about the ratio. Neither argument has merit. Courts have repeatedly rejected equal protection challenges to the crack/cocaine sentencing disparity. *See, e.g.*, *United States v. Spears*, 469 F.3d 1166, 1172 n.4 (8th Cir. 2006) (collecting cases); *United States v. Jones*, 54 F.3d 1285, 1294 (7th Cir. 1995). Additionally, Rule 11 requires a district court to inform a defendant who is pleading guilty of "the nature of the charge" against him. It does not require the court to inform the defendant how that charge

---

[2] Though McReynolds argues that cocaine and crack are scientifically indistinguishable, that is simply not true. *See United States v. Booker*, 260 F.3d 820, 823-24 (7th Cir. 2001).

compares to other similar charges. *See United States v. Serrano*, No. 02-1167, 57 Fed. App'x 12, 15 (2d Cir. 2002) (rejecting defendant's contention that Rule 11 required the district court to advise the defendant of the 100:1 crack to cocaine sentencing disparity); *United States v. Peterson*, No. 01-1173, 48 Fed. App'x 348, 349 (2d Cir. 2002) (same).

### III.  Conclusion

The Court affirms McReynolds's conviction and all three defendants' sentences.

A true Copy:

      Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*